**ICELAND TELECOM, LTD., Plaintiff,**

v.

**INFORMATION SYSTEMS AND NETWORKS CORPORATION, et al. Defendants.**

**No. CIV.A. AW–02–2053.**

United States District Court, D. Maryland, Southern Division.

June 17, 2003.

published decision)("Nor was [plaintiff] entitled to initiate suit after suit based on different statutes.").

Neil L Henrichsen, Henrichsen Siegel PLLC, Joanna Ruth Onorato, Washington, DC, for Plaintiff.

Glenn William Darrow, Golding Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, MD, Benjamin M Kahrl Benjamin Kahrl, Attorney at Law, Washington, DC, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Iceland Telecom, Ltd. ("Plaintiff") brought this diversity action against Arvin Malkani ("Malkani"), ISN Global Communications, Inc. ("ISNGC"), and Information Systems and Networks Corporation ("ISN")(collectively, "Defendants") alleging in two counts breach of contract and unjust enrichment. Defendants Malkani and ISN have moved the court for partial summary judgment, arguing that (a) they were non-parties to the contract between Plaintiff and ISNGC and (b) no grounds exist to pierce the corporate veil holding them liable for the debts and obligations of ISNGC [Paper No. 17]. The motion has been fully briefed by the parties. No hearing is deemed necessary. *See* D. Md. R. 105.6. Upon consideration of the arguments made in support of, and opposition to, the motion, the Court makes the following determinations.

## I. FACTUAL BACKGROUND

ISNGC was a telecommunications company incorporated in 1998 under the laws of the State of Delaware. The company was founded by Malkani. ISN was founded in 1980 and its CEO/President and sole-owner is Malkani's mother, Roma Malkani. Iceland Telecom is a telecommunications service provider in Iceland. Iceland Telecom owns Skima, Ltd. ("Skima"), which provides internet telephone services.

Arvin Malkani was the sole-owner, sole stockholder, CEO, and president of ISNGC. The three directors of the company were Malkani, his mother Roma, and his sister Sabrina Malkani. Malkani claims that ISNGC provided "internet telephony service". ISNGC was headquartered in the same building as ISN in Bethesda, Maryland. The building was owned by another separate company, which Roma Malkani also owned. ISNGC also did business in New York. ISNGC was not, however, registered to do business in either Maryland or New York. Plaintiff also asserts that ISNGC never paid state or federal taxes during its two-year existence. Defendants do not directly dispute this assertion; Malkani stated in his deposition that he "thinks" ISNGC paid taxes.

ISNGC never held a stock-holder meeting, nor did it ever hold a meeting of corporate directors. Roma Malkani stated in her deposition that she did not know that she was a member of the board and she also posited that her daughter, Sabrina, would also not be aware that she was on the board of ISNGC.

All indications point to the fact that ISNGC was a subsidiary of ISN. ISN gave one million dollars in start-up funds to ISNGC. ISNGC's letter-head stated that ISNGC was an "ISN Company". A description-of-business form stated that ISN was its "parent company". Additionally, it is not in dispute that Roma Malkani and ISN were directly involved in the day-to-day operations of ISNGC. The pay stubs for ISNGC's president, Malkani, indicate that he was paid salary by ISN. ISN also reviewed ISNGC's expenses and reimbursed many of them. Time sheets for ISNGC employees were submitted to ISN. Other ISNGC expenses were picked up by ISN: (1) ISNGC travel expenses (2) Mal-

kani's ISNGC business dinners (3) magazine subscriptions; (4) petty cash and lunches; and (5) other invoices for services provided to ISNGC by other companies.

Additionally, ISN and ISNGC shared the same office space. There is nothing in the record to suggest that any payments were made by ISNGC to ISN for the "leased" space. ISNGC used ISN's overhead, including phone numbers and office furniture. It appears also that some of the staff for ISN did work for ISNGC.

In early 1999, ISNGC and Plaintiffs entered into negotiations. The negotiations were carried out by Skima for Iceland Telecom and by Malkani. The communications between the parties indicate that Plaintiff thought that it was dealing with ISN. Malkani did not disabuse Plaintiff of this notion. In fact, he appears to have added to the confusion. For example, he wrote an email to Skima stating that he would be gone the following week, but that in his absence Plaintiff should contact an ISN employee.

Malkani also faxed a non-disclosure agreement to Plaintiffs. The fax cover sheet was from ISN. In the email correspondence, Plaintiff repeatedly referred to ISNGC as ISN. The parties then entered into an agreement, which was signed only by ISNGC and Plaintiff. Eventually, a payment dispute arose between the parties. ISNGC "ceased to exist" in 2001.

## II. SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Etefia v.*

*East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2729.1 (3d.1998). The non-movant must show that she has access to admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See id.* at 317, 106 S.Ct. 2548 (1986). For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving

party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986). While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

The issue presented in Defendants' motion for partial summary judgment is whether Arvin Malkani, individually, and/or ISN can be sued by Plaintiff for the alleged breach of contract of ISNGC. Plaintiff does not dispute that neither ISN nor Malkani were party to the contract. Plaintiff nevertheless argues under two theories for why the Court should hold those non-parties liable for the obligations of ISNGC: (1) the Court should pierce the corporate veil under an instrumentality/alter ego theory; and/or (2) the Court should hold that ISNGC acted as an agent for Malkani or for ISN. Defendants argue that no grounds exist to hold the non-parties liable either under the "piercing the corporate veil" doctrine or under a doctrine of agency.

### A) *Piercing the Corporate Veil: Maryland Law*

■ The oft-stated rule on piercing the corporate veil in Maryland is that "although courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders are generally not held individually liable for the debts and obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity." *Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.,* 275 Md. 295, 310, 340 A.2d 225

(1975)(internal citations omitted); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.,* 126 Md. App. 294, 306, 728 A.2d 783 (1999); *Dixon v. Process Corp.,* 38 Md.App. 644, 654, 382 A.2d 893 (1978). Much like individual stockholders, a corporate parent also will not be liable for the debts/obligations of its subsidiary absent the showing of the same two factors. *See Dixon,* 38 Md.App. at 654, 382 A.2d at 899 (court would not pierce the corporate veil absent fraud or the need to enforce a paramount equity even when the two corporations were found not to be separate entities). The Maryland state courts have emphasized the difficulty faced by a Plaintiff seeking to hold a parent liable for the obligations of the subsidiary stating, "woe unto the creditor who seeks to rip away the corporate facade in order to recover from one sibling of the corporate family what is due from another in the belief that the relationship is inseparable, if not insufferable, for his is a herculean task." *Id.* at 645, 382 A.2d 893.

While it is clear that a showing of fraud will often suffice to pierce the corporate veil, it is less clear what other situations give rise to the liability of individual stockholders. "Despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged the piercing of the corporate veil 'for reasons other than fraud' have failed in Maryland courts." *Residential Warranty,* 126 Md.App. at 307, 728 A.2d at 789 (citing *Travel Committee, Inc. v. Pan American World Airways, Inc.,* 91 Md. App. 123, 138, 603 A.2d 1301 (1992)). "Notwithstanding its hint that enforcing a paramount equity might suffice as a reason for piercing the corporate veil, the Court of Appeals to date has not elaborated upon the meaning of this phrase or applied it in any case of which we are

aware." *Travel Committee*, 91 Md.App. at 138, 603 A.2d at 1318.

In *Travel Committee*, the Court of Special Appeals hinted that a court should look to the Fourth Circuit opinion in *DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir.1976) for guidance in analyzing whether the court should look beyond the corporate fiction, holding individual stockholders liable. The Fourth Circuit, applying South Carolina law, stated that on occasion courts should pierce the veil even absent fraud:

> But when substantial ownership of all the stock of a corporation in a single individual is combined with other factors clearly supporting disregard of the corporate fiction on grounds of fundamental equity and fairness, courts have experienced 'little difficulty' and have shown no hesitancy in applying what is described as the 'alter ego' or 'instrumentality' theory in order to cast aside the corporate shield and to fasten liability on the individual stockholder.

*DeWitt*, 540 F.2d at 685. The *Travel Committee* court appeared to cite *DeWitt* with approval for a list of factors to be considered by courts faced with arguments for piercing the corporate veil:

> These include: whether the corporation was grossly undercapitalized, the corporation's failure to observe corporate formalities, non-payment of dividends, the debtor's corporation's insolvency, the dominant stockholder's siphoning of corporate funds, the non-functioning of other officers or directors, the absence of corporate records, and the corporation's status as a facade for the stockholder's operations.

*Travel Committee*, 91 Md.App. at 159, 603 A.2d at 1319. It is unclear, however, from the *Travel Committee* opinion whether the Court then went on to *apply* these factors to the case before it or whether it instead

was referencing these factors as merely persuasive authority.

Were the Court to apply the *DeWitt* factors to the case at bar, it would be hard pressed to conclude that equity does not demand the piercing of the corporate veil. Arvin Malkani was the sole owner and stockholder of ISNGC. Furthermore, all other factors indicate that ISNGC was a mere "instrumentality". ISNGC appears to have disregarded all corporate formalities. The company never had a board of directors meeting, nor was there ever a meeting of stockholders. ISNGC never registered to do business in the two places that it was doing business, New York and Maryland. It also appears that ISNGC never paid taxes to those two states or to the federal government. In his deposition, Malkani stated that he "thinks" ISNGC paid taxes, but no proof was provided in support of that assertion. The Court has before it no corporate records from ISNGC; it also has no record of why ISNGC "ceased to exist".

On top of all that, the overlap between ISN and ISNGC is telling of the "instrumentality" nature of the relationship. ISN paid salaries to employees at ISNGC including Malkani himself. When expenses were charged to ISNGC, they were reimbursed by ISN. The start-up money for ISNGC came from ISN, and when ISNGC was short on money, Roma Malkani "loaned" the company between one-hundred and two-hundred thousand dollars. No record exists of any repayment of that loan. Above and beyond all that, and drawing all inferences in favor of the non-movant, ISNGC appears to have been grossly undercapitalized.

█ In many other jurisdictions, this plethora of evidentiary facts would support the Court's denying of this partial summary judgment motion and its piercing of

the corporate veil so that Plaintiff could hold Malkani and ISN liable for the debts and obligations of ISNGC. Whatever may be said about other jurisdictions, however, the law in Maryland leads this Court to conclude that Plaintiff's argument must fail for the following reasons. First, for however persuasive the *DeWitt* opinion may sound-and, in fact, its reasoning has been applied in other jurisdictions-it is only that: persuasive. It has no binding effect on this Court because it was applying the law of South Carolina. Second, all binding precedent from the state courts of Maryland, while referencing other factors, give this Court no example of when a Court should pierce the corporate veil absent a showing of fraud; in fact, the cases demonstrate that Maryland has a markedly restrictive approach to piercing the corporate veil. In *Bart Arconti*, the high court of Maryland stated that even if a sham corporation was set-up for the *sole* purpose of evading legal obligations, a court should not use its equitable powers to pierce the corporate veil. *Bart Arconti*, 275 Md. at 309, 340 A.2d at 233–34. Similarly, in *Dixon*, the Court stated that even if a subsidiary was a mere "instrumentality"-which the *Dixon* Court had concluded was established in that case-it would still not suffice to hold the parent liable. *Dixon*, 38 Md.App. at 655, 382 A.2d at 900. As for the failure to abide by corporate formalities, it was clear in *SS Vedalin* that Chief Judge Northrop had serious doubts about the validity of the corporation. He seemed convinced that the corporation used by the individual investors to shield themselves from liability was a fiction, calling evidence that it wasn't a mere "alter

ego... tenuous at best." He refused, however, to disregard the corporate entity. *SS Vedalin*, 346 F.Supp. at 1181.

Plaintiff strenuously argues that the Court should ignore this overwhelming binding precedent, applying the *DeWitt* factors enumerated by the Fourth Circuit. But the Court would apparently then become the first federal court sitting in diversity in Maryland to pierce the corporate veil upon a theory of the need to enforce a paramount equity, expanding the breadth of the law substantially. The Maryland courts that have spoken on the issue have cautioned against piercing the corporate veil. It is not the province of this Court, but rather the state courts of Maryland, to flesh out and expand the factual scenarios that could warrant a court's piercing of the corporate veil. For those reasons, the Court will not pierce the corporate veil to hold Malkani or ISN liable for the debts of ISNGC.[1]

### B) *Agency*

 Plaintiff alternatively argues that ISNGC was the agent of Malkani and ISN, or that agency by estoppel should prevent ISN from disclaiming liability. "The creation of an agency relationship ultimately turns on the parties' intentions as manifested by their agreements or actions." *Green v. H & R Block, Inc.*, 355 Md. 488, 503, 735 A.2d 1039 (1999). The agency agreement need not be in writing; it can be implied from the actions of the parties' demonstrating their intent to create a principal-agent relationship. *See id.* "If the party alleging the existence of a principal agent relationship fails to produce suf-

---

1. The law cited in Plaintiff's opposition papers does nothing to support its position. For example, Plaintiff cites to *In re County Green Ltd. Partnership*, 604 F.2d 289, 292 (4th Cir. 1979) for a case supporting the notion of piercing the corporate veil. The case has no applicability here, however, because the Court was not applying Maryland law. Similarly, *Colandrea v. Colandrea*, 42 Md.App. 421, 401 A.2d 480 (1979) does nothing for Plaintiff's cause because there the court made an explicit finding of fraud.

ficient evidence to allow a reasonable fact finder to conclude that such a relationship exists, then summary judgment would be proper on the agency issue." *See id.* at 505, 735 A.2d 1039.

▮▮▮ Nothing in the record supports a finding that ISN had established an principal-agent relationship with ISNGC. There was no agreement between the parties, not do their actions manifest any intent to create such a relationship. Absent any agreement between ISN and ISNGC, Plaintiff appears to be making the alternative argument of "apparent authority" or "agency by estoppel". This Court has stated the rule under both arguments:

> Under the doctrine of apparent authority, a principal will be bound by the acts of a person purporting to act for him where 'the words or conduct of the principal cause the third party to believe that the principal consents to or has authorized the conduct of the agent.' A similar showing is required to establish agency by estoppel. 'Like apparent authority, an agency by estoppel can arise only where the principal, through words or conduct, represents that the agent has authority to act and the third party reasonably relies on those misrepresentations.'

*Integrated Consulting Services, Inc. v. LDDS Communications, Inc.,* 996 F.Supp. 470, (D.Md.1998)(quoting *Johns Hopkins Univ. v. Ritter,* 114 Md.App. 77, 96, 689 A.2d 91 (1996)(internal quotations omitted)).

▮▮▮ Neither the claim for apparent authority nor for agency by estoppel hold up under scrutiny in this case. In order to find that an apparent authority was granted to ISNGC, the Court would have to find that *ISN* (the alleged principal), not ISNGC, took some action to engender that belief in Plaintiff. The Court would also have to find that there was some mutual intention on the part of ISN and ISNGC to create this relationship. Other than mere speculation, no such showing has been made. As for the question of estoppel, disregarding any allegation of reliance on the part of Plaintiff, the Court again concludes that the record is devoid of action taken by ISN to warrant the imposition of estoppel. Without such a showing, any allegation that Plaintiff was misled will not suffice to find the creation of an agency by estoppel. In support of its position, Plaintiff can cite to no case where, under similar factual circumstances to the ones in this case, a Maryland court held that agency was created by estoppel.

## IV. CONCLUSION

Having determined that no grounds exist for piercing the corporate and that no principal-agent relationship was established between ISN and ISNGC, the Court must hold that ISN and Arvin Malkani can not as a matter of law be liable for the debts and obligations of ISNGC. As such, Plaintiff will only be allowed to proceed with its claim against the corporate entity of ISNGC. The Court is cognizant of the fact that a potential result of its finding is that, considering ISNGC's purported insolvency, Plaintiff may have no avenue to seek redress for the alleged wrong that occurred. Nevertheless, whereas Plaintiff's claim might have found receptive ears in a jurisdiction other than Maryland, the claims against ISN and Arvin Malkani have run up against the strong preference in this State in favor of the preservation of the corporate form. An Order consistent with this Opinion will follow.