Bradley D. PETRY, et al., individually
and on behalf of a class of consumers
similarly situated

v.

WELLS FARGO BANK, N.A. et al.

Civil Action No. WMN–08–1642.

United States District Court,
D. Maryland.

Feb. 11, 2009.

Cyril Vincent Smith, III, Peter M. Nothstein, Zuckerman Spaeder LLP, Baltimore, MD, Richard S. Gordon, Benjamin Howard Carney, Quinn Gordon and Wolf Chtd., Towson, MD, for Plaintiffs.

Thomas M. Hefferon, David L. Permut, Soyong Cho, Goodwin Procter LLP, Jay N. Varon, Wendy K. Arends, Foley and Lardner LLP, Washington, DC, Brian M. Forbes, Brian W. Stolarz, David D. Christensen, Irene Claire Freidel, K and L Gates LLP, Boston, MA, for Defendants.

### MEMORANDUM

WILLIAM M. NICKERSON, Senior District Judge.

Presently pending before this Court is the motion to dismiss or, in the alternative, for summary judgment filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo Bank"), Wells Fargo Ventures, LLC ("Wells Fargo Ventures") (collectively, Wells Fargo Bank and Wells Fargo Ventures will be referred to as Wells Fargo), Walker Jackson Mortgage Corp. ("Walker Jackson"), Prosperity Mortgage Company ("Prosperity"), Long & Foster Real Estate, Inc. ("L & F Real Estate"), and Long & Foster Companies ("L & F Co.") (collectively, L & F Real Estate and L & F Co. will be referred to as Long & Foster). Paper No. 27. The motion is fully briefed. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted in part and denied in part.

## I. BACKGROUND

On June 23, 2008, Plaintiffs Bradley Petry and Stacey Miller ("Named Plaintiffs"), for themselves and on behalf of consumers similarly situated, filed this class action alleging that Wells Fargo Bank and its wholly owned subsidiary, Wells Fargo Ventures together with L & F Real Estate, its affiliate Walker Jackson and both companies' parent, L & F Co., created a sham "lender" known as Prosperity Mortgage Company. As alleged by Plaintiffs, Wells Fargo and Long & Foster created Prosperity to provide Wells Fargo with a pipeline of referrals from Long & Foster, a real estate broker, and to provide Wells Fargo a means to pay split finder's fees or kickbacks to Long & Foster for those referrals, in violation of Maryland's Finder's Fee Act, Md.Code Ann., Com. Law §§ 12–801 et seq. Compl. at ¶ 1–5. In addition to violations of the Finder's Fee Act, Plaintiffs also assert against all Defendants violations of the Maryland Consumer Protection Act (CPA), Md.Code Ann., Com. Law §§ 13–101, et seq., as well as common law claims for restitution and unjust enrichment. The Complaint also alleges that Wells Fargo Bank and Long & Foster are liable as aiders and abettors of, and co-conspirators in, the acts of the others, and that Wells Fargo Bank is liable as an assignee of Prosperity. Plaintiffs allege that because both Walker Jackson and Wells Fargo Ventures are general partners in Prosperity, they are liable for its acts under Maryland common law. Finally, Plaintiffs claim that because L & F Real Estate was acting as the agent of its

parent company, L & F Co., during the scheme, L & F Co. is liable for its actions.

Plaintiffs assert that under Defendants' scheme, Wells Fargo solicited mortgage origination work from Long & Foster, promising that Long & Foster could make additional money for each loan application referred, without performing any additional work. *Id.* at ¶ 2. Wells Fargo, together with Long & Foster and Walker Jackson, then set up Prosperity as a "joint venture" partnership. *Id.* Plaintiffs allege that Prosperity is a mortgage broker that was established to procure, arrange or otherwise assist Long & Foster customers in obtaining mortgage loans funded by Wells Fargo. *Id.*

The Complaint alleges that Defendants' scheme involved two distinct steps. First, Long & Foster would arrange for homebuyers—in whose transactions it also acted as a real estate broker—to obtain a mortgage loan from Prosperity, a purported mortgage lender located in Long & Foster's various offices throughout the state of Maryland. *Id.* at ¶ 3. According to Plaintiffs, however, Prosperity had no money of its own to lend and, instead of acting as lender, brokered the loan to Wells Fargo. *Id.* at ¶¶ 3, 27–28. Thus, although Prosperity held itself out as a lender, at the closing table, Wells Fargo provided the funds for the loan and received an assignment of the obligation.[1] *Id.* at ¶¶ 3, 40, 42. To the borrower, it appeared as if the assignment was only of the "servicing" rights to the loan to Wells Fargo, but according to Plaintiffs, Wells Fargo was also the source of funds for the loan and was thus, the funding lender. *Id.*

Plaintiffs allege that for brokering these mortgage loans to Wells Fargo, both Long & Foster and Prosperity were paid broker fees, known in Maryland as "finder's fees."[2] As alleged by Plaintiffs, Prosperity and Long & Foster received these finder's fees without disclosing to the borrower that these fees were ultimately to reward Long & Foster for referring and arranging the Wells Fargo mortgage loan and for aiding and assisting the borrower in obtaining the mortgage.

According to Plaintiffs, the transactions of the Named Plaintiffs exemplify the working of the above-described scheme. Bradley Petry and Stacey Miller, a married couple, utilized Long & Foster as their real estate agents in connection with the purchase transaction for a residence in Baltimore, Maryland. *Id.* at ¶¶ 59, 60. Once they decided to purchase their house, Long & Foster arranged for Plaintiffs to obtain their mortgage loan from Prosperity. *Id.* Prosperity, in turn, assisted Plaintiffs in procuring a loan funded by and assigned to Wells Fargo. *Id.* at ¶ 61. Plaintiffs allege that in connection with the origination of their $220,000 loan, they paid $1,290.00 in finder's fees to Prosperity, $225.00 to L & F Real Estate, and an unknown amount to L & F Co. *Id.* at ¶ 65, Ex. 1 (Plaintiffs' HUD–1 Settlement Statement). As a result of Defendants' wrongful acts, Plaintiffs allege that they were damaged.

Defendants now move for dismissal, or for summary judgment as to all counts against all Defendants.

## II. STANDARDS OF LAW

To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations" are

---

**1.** *See infra* at 10.

**2.** A "finder's fee" is defined as "any compensation or commission directly or indirectly imposed by a broker and paid by or on behalf of the borrower for the broker's services in procuring, arranging, or otherwise assisting a borrower in obtaining a loan or advance of money." Md.Code Ann., Com. Law § 12–801(c).

not required, but a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' " and this "requires more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (internal citations omitted). In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). A plaintiff must have alleged facts "to raise a right to relief above the speculative level[.]" *Twombly*, 127 S.Ct. at 1965. "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

A court considers only the pleadings when deciding a motion to dismiss. If matters outside the pleadings are presented and not excluded, the motion must be considered under the summary judgment standard of Fed.R.Civ.P. 56. *See Villeda v. Prince George's County, MD.*, 219 F.Supp.2d 696, 698 (D.Md.2002). In this case, the parties have submitted matters outside the pleadings. As explained below, however, this Court finds that Plaintiffs are entitled to further discovery before this Court can rule on any factual disputes. This Court did not consider any exhibits outside of the pleadings and thus, the motion will not be converted to one for summary judgment.

## III. DISCUSSION [3]

■ In their motion to dismiss or, in the alternative, for summary judgment Defendants raise multiple arguments related to the Maryland Finder's Fee Act. According to Defendants, the Finder's Fee Act expressly excludes from its definition of "mortgage broker" a person who is "named as a lender in the agreement, note, deed of trust, or other evidence of indebtedness." Md.Code Ann., Com. Law § 12–801(e). Because a "lender" is defined by the Finder's Fee Act as any person who "makes a mortgage loan to any person," Md.Code Ann., Com. Law § 12–801(d), Defendants argue that Prosperity was Plaintiffs' lender and therefore could not have brokered the loan at issue. Mot. to Dismiss at 12. This Court, however, agrees with Plaintiffs and Maryland courts that Defendants' interpretation of the law runs counter to the plain language of the Finder's Fee Act and would render a portion of the Act meaningless.

■ Plaintiffs' Complaint alleges that Prosperity acted simultaneously as both a mortgage broker and a nominal mortgage lender, and collected fees for both. Under § 12–804(e) of the Finder's Fee Act, "a mortgage broker may not charge a finder's fee in any transaction in which the mortgage broker ... is the lender...." The plain language of the statute clearly contemplates a situation where a mortgage broker acts as a mortgage lender. What it forbids, on the other hand, is the collection of a fee by someone acting as both broker and lender. This interpretation is supported by decisions from the Circuit Court for Baltimore City.[4] For example, in *Jones*

3. At the same time that Defendants filed their motion to dismiss or, in the alternative, for summary judgment, Defendants also filed a motion to stay or limit discovery pending resolution of their motion. Because the motion to dismiss will be denied, the motion to stay discovery will also be denied as moot.

4. Although these decisions are not binding on this Court, the Court will look to them as

*v. Nationscredit Fin. Svcs. Corp.*, No. 24–C–02–00572 (February 3, 2003), the defendants, like Defendants here, attempted to argue "that it is a definitional impossibility for a mortgage broker to be a mortgage lender under § 12–804(e)." The *Jones* court reasoned that "in keeping with the consumer protection purposes of the ... Act, a broker can be a lender in the same transaction under § 12–804(e)." Slip Op. at 6. "[A]ny other interpretation," the court stated, "would result in a loophole allowing a broker/lender to sidestep the restrictions of the Finder's Fee Act and facilitate the practice of loan flipping." *Id.* The court also noted that "the history of the statute provides ample support for" this conclusion, "because the legislature contemplated that a lender and a broker could serve a dual role in a transaction and [sought] ... to deter brokers who have interested relationships with lenders from collecting a fee." *Id.* at 6, 7. The court concluded that a "plain reading of the statute indicates that the dual role is recognized and the legislature is interested in heavily regulating these transactions to protect consumers from ... redundant and excessive fees." *Id.* at 8.[5] This Court agrees and accordingly, finds that Plaintiffs have sufficiently alleged that Prosperity violated the Finder's Fee Act by acting as both Plaintiffs' mortgage broker and nominal mortgage lender, and collecting a fee for these actions.

■ Defendants next argue that Prosperity did not act as a mortgage broker and thus, could not have violated the Finder's Fee Act. This dispute is one, among many others raised by Defendants, which cannot be decided as a matter of law, but which instead requires further discovery. Plaintiffs allege that Prosperity acted as a mortgage broker in numerous "table-funded" transactions which were funded by Wells Fargo and closed in the name of Prosperity. Compl. at ¶¶ 40–43. A "table-funded" transaction is a closing "at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 24 C.F.R. § 3500.2(b). As Defendants point out, "the test for determining whether a loan is table-funded or a *bona fide* secondary market transaction requires the Court to consider *the facts:* that is, who is 'the real source of funding and the real interest of the funding lender.'" Reply to Mot. to Dismiss at 4 (emphasis added) (quoting 24 C.F.R. § 3500.5(b)(7); 24 C.F.R. § 3500, App. B–5).

At this early stage in the litigation, Plaintiffs have not had the opportunity to conduct *any* discovery. Thus, as in the case of *Minter v. Wells Fargo Bank, N.A., et al.*, 593 F.Supp.2d 788 (D.Md.2009), a case involving the same defendants and the same underlying set of facts, this case provides a situation where most, if not all the relevant facts are exclusively within the control of Defendants. The Fourth Circuit has noted that when such a situation presents itself, "'sufficient time for discovery is considered especially important....'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247–48 (4th Cir.2002) (quoting 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)).

■ Like the table-funding issue, many of the other issues raised by Defendants

---

guidance in the interpretation of a Maryland law.

**5.** In addition to the *Jones* opinion, two other decisions from the Circuit Court for Baltimore City have stated similar opinions—*Tay-lor v. Savings First Mtg., LLC*, No. 24–C–02–001635 (October 14, 2003) and *Thrash–Webster v. Charm City Mtg. Corp.*, No–24–C–99–003984 (September 6, 2001).

are factually based and require discovery before this Court can make a proper ruling. For example, Defendants allege that Prosperity did not charge Plaintiffs a "finder's fee" because the fees paid to Prosperity were for work actually performed. It is undisputed that Prosperity received a total of $1290.00 paid directly by the borrowers as "processing," "underwriting," and "application" fees. Compl., Ex. 1 (HUD–1 Settlement Statement). What is disputed is whether Prosperity actually performed any of those services— a factual dispute requiring full discovery. *See* Compl. at ¶ 29 (alleging that Prosperity is "simply a conduit through which Wells Fargo Bank receives referrals of mortgage loan business from Long & Foster.").

■ Defendants also argue that the Finder's Fee Act claims against Prosperity are preempted by Section 501(a)(1) of the Depository Institutions Deregulation and Monetary Control Act[6] (DIDMCA), 12 U.S.C. § 1735f–7a, and that Plaintiffs have failed to state a claim of restitution and unjust enrichment. Neither of these issues can be decided as a matter and law and Plaintiffs must be given a chance to conduct discovery before having to respond to the factual allegations set forth by Defendants.

■ Although many of Plaintiffs' claims are sufficiently plead, Plaintiff's Complaint does fall short on some issues. First, as Defendants note, the Complaint alleges violations of the Finder's Fee Act against L & F Real Estate. The Complaint, however, fails to allege that L & F Real Estate engaged in any traditional mortgage broker activities. Instead, Plaintiffs allege that Prosperity loan officers assisted consumers in completing loan applications, Compl. at ¶ 38; that Prosperity table funds the loans, *id.* at ¶ 42; and that Prosperity closes the loans in its own name, *id.* at ¶¶ 42, 49. Without any allegations that L & F Real Estate performed the services of a mortgage broker, other than summarily stating that "fact," Plaintiffs' direct Finder's Fee Act claims against L & F Real Estate must fail.

■ In addition to the primary liability alleged against L & F Real Estate, Plaintiffs also allege that L & F Real Estate is derivatively liable as an aider and abettor and as a co-conspirator in a civil conspiracy. Plaintiffs make these same allegations against Wells Fargo Bank as well as the allegation that Wells Fargo Bank is liable as the assignee of Plaintiffs' loan from Prosperity.[7] This Court finds that Plaintiffs' allegations regarding aiding and abetting and assignee liability fail as a matter of law, but that their civil conspiracy claims turn on factual disputes that require discovery and will not be dismissed at this stage.

---

6. Section 501(a)(1) of the DIDMCA preempts "[t]he provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved...." 12 U.S.C. § 1735f–7a(a)(1). As a matter of law, this Court finds that finder's fees do fall under the Federal interpretation of "discount points, finance charges, or other charges" and are thus covered by the DIDMCA. *See Sweeney v. Savings First Mortgage, LLC,* 388 Md. 319, 879 A.2d 1037, 1042 (2005) (finding that finder's fees as defined by the Maryland law would fall under the Federal interpretation of "discount points, finance charges, or other charges" under the DIDMCA). The *Sweeney* court ultimately found no DIDMCA preemption because the defendant in that case was the broker, not the "creditor," in the plaintiff's transaction. *Id.* at 1046–49. Whether Prosperity is a creditor or broker is a question of fact.

7. Plaintiffs do not allege primary liability against Wells Fargo Bank.

■ Although Maryland law recognizes aider and abettor civil liability for those who "actively participate ... in the *commission of a tort*," *Alleco, Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176, 665 A.2d 1038, 1050 (1995) (emphasis added), Maryland courts have not yet extended the scope of aiding and abetting liability or assignee liability to statutes providing for civil liability where the statute does not expressly impose this additional avenue of liability. As noted recently by this Court, "civil aiding and abetting liability is determined on a statute-by-statute basis." *Baltimore–Washington Telephone Co. v. Hot Leads Co., LLC*, 584 F.Supp.2d 736, 745 (D.Md.2008) (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181–82, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)). The legislature "[knows] how to impose aiding and abetting liability when it [chooses] to do so." *Central Bank of Denver*, 511 U.S. at 176, 182–83, 114 S.Ct. 1439. In this case, it is clear that the statutory language of neither the Finder's Fee Act nor the CPA specifically provide for such liability. Accordingly, this Court will not imply expanded liability under these statutes for aiding and abetting. *See Baltimore–Washington Telephone Co.*, 584 F.Supp.2d at 746 (refusing to expand liability under federal statute for aiding and abetting where statute did not expressly provide for such liability).

■ Plaintiffs, however, have sufficiently pled a claim for civil conspiracy against both L & F Real Estate and Wells Fargo Bank. A claim for civil conspiracy must allege "1) a confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damages resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257, 284 (2007). Plaintiffs have alleged a detailed scheme under which Defendants conspired to deprive Plaintiffs of their property and statutory rights by, *inter alia*, violating the Maryland Finder's Fee Act, and the Maryland CPA (both "unlawful" acts). This is all that is required. Although this Court is dismissing Plaintiffs' CPA claims, *see infra*, there are numerous factual issues regarding any alleged violations of the Finder's Fee Act that must be developed through discovery. Until then, the civil conspiracy claims remain.[8]

■ While Plaintiff's claims against Wells Fargo Bank and L & F Real Estate survive, their claims against L & F Co. do not. Plaintiff's Complaint does not allege that L & F Co. undertook any conduct itself vis-à-vis Plaintiffs that violated the Finder's Fee Act. Thus, as Defendants point out, the claim, not even alleged in the Complaint, can only be that L & F Co. derivatively violated the Finder's Fee Act if either of its subsidiaries, Walker Jackson or L & F Real Estate, violated the law.[9] As noted above, whether Walker

---

8. Defendants also assert that Plaintiffs' claims against Wells Fargo Bank are preempted by the DIDMCA and the National Bank Act (NBA), 12 U.S.C. §§ 21, *et seq.*, and its implementing regulations. The DIDMCA is meant to preempt regulation of creditors as defined under that law, whereas the NBA is meant to preempt regulation of mortgage brokers. Neither the DIDMCA nor the NBA, however, were meant to preempt claims of derivative

liability such as Plaintiffs' claim of civil conspiracy against Wells Fargo Bank.

9. Plaintiffs state that they are also asserting claims against Long & Foster Co. as an aider/abettor and a co-conspirator. The Complaint, however, does not allege what steps Long & Foster Co. took as such an aider/abettor or co-conspirator and thus, any claims based on these theories fail as a matter of law.

Jackson (as general partner of Prosperity)[10] or L & F Real Estate violated the law are issues of fact that must be developed through discovery. It is clear, however, that the Complaint does not allege any circumstances where either Walker Jackson or L & F Real Estate (as a co-conspirator) were acting as L & F Co.'s agent or where corporate veils should be ignored.[11] *See Iceland Telecom, Ltd. v. Info. Sys. & Networks Corp.*, 268 F.Supp.2d 585, 589 (D.Md.2003) (finding that it is well-settled law in Maryland that a corporate parent will not be liable for the debts or obligations of its subsidiaries absent a showing of fraud or where there is a "need to enforce a paramount equity"). Thus, this Court will dismiss the claims against L & F Co.

■■■ Plaintiffs' CPA claims must also be dismissed. Maryland's CPA provides that "any person may bring an action to recover for injury or loss sustained by him *as a result of* a practice prohibited by this title." Md.Code Ann., Com. Law § 13–408(a) (emphasis added). One prohibition of the CPA prevents the use of unfair or deceptive trade practices, including any false statements and misrepresentations. Md.Code Ann., Com. Law § 13–301. In this case, Plaintiffs argue that Defendants' misrepresentations regarding Prosperity and Wells Fargo make up the prohibited practice upon which they base their CPA claim. Compl. at ¶ 122. At the same time, however, Plaintiffs themselves allege

that it was Defendants' "illegal kickback scheme that artificially inflated the fees and interest rate paid by Plaintiffs," and not the alleged misrepresentations. Opp'n to Mot. to Dismiss at 47. Because Plaintiffs have not alleged that it was the misrepresentations themselves that caused the alleged inflated fees and interest rates, this claim must fail as a matter of law. *See Sacks v. Philip Morris, Inc.*, 1996 WL 780311, at *2 (D.Md. Sept. 19, 1996) (dismissing CPA claim where plaintiff's pleadings and briefing showed that product defect, not misrepresentations, caused injury).

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss or, in the alternative, for summary judgment will be denied in part and granted in part and Defendants' motion to stay will be denied as moot. A separate order will issue.

## ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 11th day of February, 2009, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That the motion to dismiss, or in the alternative, for summary judgment filed by Defendants Wells Fargo Bank, N.A. (Wells Fargo Bank), Wells Fargo Ventures, LLC, Walker Jackson Corp., Prosperity Mort-

---

**10.** Prosperity is structured as a Minnesota general partnership and its two general partners are Walker Jackson and Wells Fargo Ventures. Under settled principles of partnership law, the two general partners are liable for any wrongs committed by their partnership. *Dow v. Jones*, 311 F.Supp.2d 461, 466 (D.Md.2004).

**11.** Plaintiffs argue that statements of Wes Foster, the founder of L & F Co. and L & F Real Estate, should create an issue of fact as

to whether L & F Co. participated in the alleged scheme that deserves further discovery. As Defendants point out, however, the statement Plaintiffs point to was written close to two years after Plaintiffs' December 2005 transaction and thus, could not possibly raise factual questions relative to either L & F Co.'s participation in the alleged scheme or L & F Real Estate's actions as a mortgage broker or collection of finder's fees in that earlier time period.

gage Company, Long & Foster Real Estate, Inc. (L & F Real Estate), and Long & Foster Companies, Inc., Paper No. 28, is GRANTED in part and DENIED in part, in that:

a. Plaintiffs' primary claims against L & F Real Estate are dismissed;

b. Plaintiffs' aiding and abetting claims against L & F Real Estate and Wells Fargo Bank are dismissed;

c. Plaintiffs' claims against Long & Foster Companies, Inc. are dismissed;

d. Count III of the Complaint is dismissed;

2. That Defendants' motion to stay discovery, Paper No. 29, is DENIED as moot;

3. That the Clerk of the Court shall transmit copies of the accompanying Memorandum and this Order to all counsel of record.