**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-1869**
_____

BRADLEY D. PETRY, Individually and on behalf of a Class of persons similarly situated; STACEY M. MILLER, Individually and on behalf of a Class of persons similarly situated,

     Plaintiffs - Appellants,

   v.

PROSPERITY MORTGAGE COMPANY; WELLS FARGO BANK, N.A.; WALKER JACKSON MORTGAGE CORPORATION, formerly doing business as Prosperity Mortgage Corporation; WELLS FARGO VENTURES, LLC; THE LONG & FOSTER COMPANIES, INC.; LONG & FOSTER REAL ESTATE, INC.,

     Defendants - Appellees.

---------------------------

MORTGAGE BANKERS ASSOCIATION,

    Amicus Supporting Appellees.

_____

**No. 13-1924**
_____

BRADLEY D. PETRY, Individually and on behalf of a Class of persons similarly situated; STACEY M. PETRY, f/k/a Stacey M. Miller, Individually and on behalf of a Class of persons similarly situated,

     Plaintiffs - Appellees,

   v.

PROSPERITY MORTGAGE COMPANY; WELLS FARGO VENTURES, LLC; WELLS FARGO BANK, N.A.; LONG & FOSTER REAL ESTATE, INCORPORATED; WALKER JACKSON MORTGAGE CORPORATION, formerly doing business as Prosperity Mortgage Corporation; THE LONG & FOSTER COMPANIES, INCORPORATED,

Defendants - Appellants.

---------------------------

MORTGAGE BANKERS ASSOCIATION,

Amicus Supporting Appellants.

_____

Appeals from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, Senior District Judge. (1:08-cv-01642-WMN)

_____

Argued: May 14, 2014                    Decided: July 10, 2014

_____

Before NIEMEYER and WYNN, Circuit Judges, and Robert J. CONRAD, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Conrad joined.

_____

**ARGUED**: Benjamin Howard Carney, GORDON, WOLF & CARNEY, CHTD., Towson, Maryland, for Appellants/Cross-Appellees. Irene C. Freidel, K&L GATES LLP, Boston, Massachusetts; Jay Norman Varon, FOLEY & LARDNER LLP, Washington, D.C., for Appellees/Cross-Appellants. **ON BRIEF**: Richard S. Gordon, GORDON, WOLF & CARNEY, CHTD., Baltimore, Maryland; Cyril V. Smith, William K. Meyer, ZUCKERMAN SPAEDER LLP, Baltimore, Maryland, for Appellants/Cross-Appellees. Brian M. Forbes, K&L GATES LLP, Boston, Massachusetts; Andrew Jay Graham, John A. Bourgeois, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellees/Cross-Appellants Wells Fargo Bank, N.A., and Wells Fargo Ventures, LLC. Jennifer M. Keas, FOLEY & LARDNER LLP, Washington, D.C., for Appellees/Cross-Appellants Walker Jackson Mortgage Corporation, The Long & Foster Companies, Incorporated, and Long

2

& Foster Real Estate, Incorporated.  David L. Permut, William M. Jay, Sirisha V. Kalicheti, GOODWIN PROCTER LLP, Washington, D.C., for Appellees/Cross-Appellants Prosperity Mortgage Company.  Gary C. Tepper, Daniel J. Tobin, BALLARD SPAHR LLP, Washington, D.C., for Amicus Mortgage Bankers Association.

---

NIEMEYER, Circuit Judge:

Bradley and Stacey Petry, who borrowed $220,000 from Prosperity Mortgage Company to purchase a house in Baltimore, Maryland, contend that because of the way Prosperity Mortgage operated in relation to Long & Foster Real Estate, Inc., and Wells Fargo Bank, N.A., each of which indirectly owned one-half of Prosperity Mortgage, the fees that Prosperity Mortgage charged at closing violated the Maryland Finder's Fee Act, Md. Code Ann., Com. Law §§ 12-801 to 12-809. They claim that they are entitled to a return of the fees they paid Prosperity Mortgage, as well as statutory damages of three times the amount of those fees. The Petrys represent a class of similarly situated borrowers.

When the Petrys purchased their house, their Long & Foster real estate agent introduced them to a Prosperity Mortgage loan officer, who in turn arranged a mortgage loan that enabled them to purchase their house without any down payment. To fund the loan, Prosperity Mortgage drew on a line of credit with Wells Fargo. At closing, the Petrys paid Prosperity Mortgage typical lending fees in the amount of $1,290. Several days after closing, Prosperity Mortgage sold the Petrys' loan to Wells Fargo.

In their class action complaint, the Petrys alleged that, while Prosperity Mortgage held itself out to the public solely

4

as a mortgage lender, it also operated as a mortgage broker that helped borrowers obtain mortgage loans from Wells Fargo. They alleged further that all the fees that Prosperity Mortgage charged them (and the class of similar borrowers) were "finder's fees" within the meaning of the Maryland Finder's Fee Act. In doing this, they claimed, Prosperity Mortgage violated the Act (1) by charging finder's fees in transactions in which it was both the mortgage broker and the lender and (2) by charging finder's fees without a separate written agreement providing for them. Finally, the Petrys alleged that Long & Foster and Wells Fargo were liable with Prosperity Mortgage as aiders and abettors and as coconspirators.

After discovery was completed and the district court certified the class, the court advised the parties that it had concluded that the fees Prosperity Mortgage charged for performing lending services were not "finder's fees" within the meaning of the Finder's Fee Act, unless the fees had been inflated so that the overcharge could be considered a disguised finder's fee. It advised the Petrys that they would have to prove "that they paid some excessive or redundant fee to Wells Fargo (in the guise of Prosperity) for finding Wells Fargo as a lender." When the plaintiffs acknowledged that they lacked proof to meet that burden, the court entered judgment as a matter of law in favor of the defendants.

5

We affirm, concluding that because Prosperity Mortgage was identified as the lender in the documents executed at closing, it was not a "mortgage broker" as the Finder's Fee Act defines that term and therefore was not subject to the Act's provisions.

I

The Petrys' house purchase and loan transaction

On October 21, 2005, the Petrys purchased a house on Carroll Street in Baltimore, Maryland, for $220,000, which was paid for with a mortgage loan from Prosperity Mortgage Company. The Petrys had earlier met with a Prosperity Mortgage loan officer, who helped them select a loan product based on their financial needs and prequalified them for the loan. After the Petrys signed a purchase agreement, the loan officer prepared the formal loan application and ordered both a credit report and an appraisal of the house on their behalf. At closing, Prosperity Mortgage paid the purchase price to the sellers and received a note from the Petrys made payable to Prosperity Mortgage, which was secured by a deed of trust on the house. For its services, Prosperity Mortgage charged the Petrys $1,290, which included an application fee of $410 (most of which went to covering the cost of the appraisal ($350) and the cost of the credit report ($29.40)); a processing fee of $490; and an

underwriting fee of $390. All the closing documents identified Prosperity Mortgage as the Petrys' lender.

Four days after the transaction closed, Prosperity Mortgage sold the Petrys' loan to Wells Fargo.

## The structure of Prosperity Mortgage's operation

Prosperity Mortgage was formed in 1993 as a joint venture between Prosperity Mortgage Corporation (now known as Walker Jackson Mortgage Corporation, a wholly owned subsidiary of The Long & Foster Companies, Inc. and an affiliate of Long & Foster Real Estate, Inc.) and Norwest Mortgage, Inc. (a predecessor to Wells Fargo Bank, N.A.). During the relevant time period, Prosperity Mortgage was owned in equal shares by Walker Jackson Mortgage and Wells Fargo Ventures, LLC, with the two partners each appointing half of the company's operating committee.

The joint venture agreement that created Prosperity Mortgage stated that the company would operate "a residential mortgage lending business principally with customers of Long & Foster Real Estate," and it did so using funds obtained through a warehouse line of credit from Wells Fargo. Prosperity Mortgage used the line of credit to make mortgage loans to borrowers in its own name, and it charged borrowers underwriting and processing fees at closing. Within days of closing, Prosperity Mortgage sold most of its loans to Wells Fargo,

7

although some were sold to third-party investors, such as U.S. Bank and Nationwide Bank. With respect to the sale of each loan, Prosperity Mortgage also received a "service release premium" as compensation for the sale of its right to service the loan. After selling the loan, Prosperity Mortgage used the proceeds to pay off the warehouse line of credit.

Prosperity Mortgage was licensed by Maryland, as well as by other States, as a mortgage lender, and it employed approximately 300 employees. It contracted with Wells Fargo for services in connection with underwriting higher-risk loans and with preparing loans for sale after closing.

## The Petrys' class action complaint

More than two years after the Petrys closed on the purchase of their house, they received an unsolicited letter from the law firm of Gordon, Wolf & Carney, Chtd., asking them to participate in a class action against Prosperity Mortgage, Wells Fargo, and Long & Foster. Bradley Petry testified that he first learned of his legal claim through this letter and that his understanding was that Prosperity Mortgage had violated the Maryland Finder's Fee Act because it acted as both "the arranger of the loan and the source of the loan." The Petrys agreed to serve as class representatives, and Gordon, Wolf & Carney filed the complaint in this case on June 23, 2008, naming the Petrys as plaintiffs

8

and class representatives.  The complaint named as defendants Prosperity Mortgage; Wells Fargo Bank and Wells Fargo Ventures (collectively, "Wells Fargo"); and Walker Jackson Mortgage, The Long & Foster Companies, and Long & Foster Real Estate (collectively, "Long & Foster").

As relevant to this appeal, the complaint alleged that Prosperity Mortgage's business model violated the Maryland Finder's Fee Act and that Long & Foster and Wells Fargo were liable for Prosperity Mortgage's violations as aiders and abettors and as coconspirators.  Under the complaint's theory, Prosperity Mortgage held itself out to the public as a mortgage lender but actually functioned as a mortgage broker in that the company was "established to procure, arrange or otherwise assist Long & Foster customers in obtaining mortgage loans funded by Wells Fargo."  The complaint alleged that all the fees Prosperity Mortgage charged at settlement constituted "finder's fees," in violation of the Finder's Fee Act, and demanded a refund of all the finder's fees that Prosperity Mortgage had collected from the Petrys and all other class members, as well as statutory damages of three times the amount of finder's fees collected.

<u>The district court's decisions</u>

The litigation continued for some five years before the district court ultimately entered judgment as a matter of law in favor of the defendants. Early in the proceedings, it had granted the defendants' motion to dismiss or for summary judgment to the extent that the complaint sought to impose aiding and abetting liability on Long & Foster and Wells Fargo. The court stated that "Maryland courts have not yet extended the scope of aiding and abetting liability . . . to statutes providing for civil liability where the statute does not expressly impose this additional avenue of liability." <u>Petry v. Wells Fargo Bank, N.A.</u>, 597 F. Supp. 2d 558, 565 (D. Md. 2009). The court also granted in part the defendants' later filed motion for summary judgment, concluding that Long & Foster and Wells Fargo could not be held liable for conspiracy to violate the Finder's Fee Act because they were not legally capable of committing the underlying tort, citing <u>Shenker v. Laureate Educ., Inc.</u>, 983 A.2d 408, 428-29 (Md. 2009). The court, however, denied the defendants' motions to dismiss the Petrys' core claim that Prosperity Mortgage was a mortgage broker that illegally collected a finder's fee while also acting as the lender.

The court also certified this action as a class action under Federal Rule of Civil Procedure 23, defining the class as:

10

> All persons who entered into a mortgage loan transaction secured by real estate located in Maryland where (1) Prosperity Mortgage (2) is identified as the mortgage lender in the operative documents relating to the transaction, (3) Prosperity Mortgage received a fee for services in the transaction, and (4) the loan was funded through a Wells Fargo line of credit.

Shortly before the scheduled trial date, the district court sent counsel for the parties a letter addressing the parties' "widely divergent views on the issue of what constitutes a 'finder's fee.'" The court indicated that it was inclined to hold that fees charged for work actually performed by Prosperity Mortgage in providing processing, underwriting, and application services were not finder's fees. The court noted that the statute defined that term to include "compensation or commission . . . for the broker's services in procuring, arranging, or otherwise assisting a borrower in obtaining a loan," Md. Code Ann., Com. Law § 12-801(d), and that nothing in that definition required it to ignore what it described as the plain meaning of the term finder's fee -- "i.e., a fee paid to one entity for finding another entity." The court emphasized that "the scheme alleged by Plaintiffs [could] only make[] sense if Defendants hid some padded finder's fee that was paid to Prosperity that would not have been paid if the loan were taken directly from Wells Fargo" and accordingly indicated that the plaintiffs would have to prove "that they paid some excessive or redundant fee to Wells Fargo (in the guise of Prosperity) for finding Wells Fargo

11

as lender." The plaintiffs admitted that they could not meet that burden, and the court accordingly took the case off the trial calendar and entered a final judgment on June 20, 2013, in the defendants' favor. Giving the basis for its judgment, the court stated that "fees charged for work actually performed are not impermissible finder's fees under the [Finder's Fee Act]" and that the plaintiffs had "acknowledg[ed] that they [had] no evidence to present to a jury that Prosperity charged any impermissible finder's fees under this view of the [Finder's Fee Act]."

From the district court's judgment, the Petrys filed this appeal. The defendants filed a conditional cross-appeal challenging the district court's class certification order should they lose on the merits. The Petrys filed a motion to dismiss the defendants' conditional cross-appeal, as well as a motion to certify to the Maryland Court of Appeals questions of how to define the term finder's fees and whether persons can conspire to violate the Finder's Fee Act.

II

The district court expressed frustration with the Petrys' changing theory of why Prosperity Mortgage was liable. It noted that their original theory was that Prosperity Mortgage was a sham lender that enabled Wells Fargo to pay Long & Foster

illegal kickbacks for mortgage loan referrals and that, as a result, the Petrys had paid higher fees than they would have had they borrowed directly from Wells Fargo. But after discovery, the Petrys found that they were unable to support this theory. Indeed, the district court noted, the evidence indicated that the Petrys had paid Prosperity Mortgage <u>less</u> than what they would have paid had Wells Fargo been the lender. The district court found it significant that, in addition to "abandon[ing] the claim that the fees paid to Prosperity were excessive," the Petrys also had "no claim that there were redundant or duplicative fees paid to Wells Fargo or any other entity in addition to the fees paid to Prosperity." In the end, the court concluded that the fees Prosperity Mortgage had charged the Petrys for performing processing and underwriting services were not mortgage broker's finder's fees, <u>unless</u> the Petrys were able to show that Prosperity Mortgage had padded its lending fees so as to disguise a hidden finder's fee. When the Petrys agreed that they could not show that they paid an inflated amount for the lending services, the court concluded that there were no further fact issues left for resolution by the jury, and it entered judgment in favor of the defendants.

The Petrys now argue that the district court erred in defining finder's fees under the Maryland Finder's Fee Act as only "'redundant and excessive' fees charged for work not

13

actually performed." They assert that the statutory definition of a broker's finder's fee contains no reference to redundancy or excessiveness, but instead includes all fees collected by a broker. And, they maintain, since Prosperity Mortgage acted as a broker by placing loans with Wells Fargo, the fees it collected were necessarily "finder's fees." The district court took a different view, concluding that Prosperity Mortgage could legally charge fees for work done <u>as a lender</u>, unless it padded those fees in such a way as to leave open the possibility that it was also charging a finder's fee.

While we agree with the district court's ultimate conclusion, we resolve the question of whether Prosperity Mortgage violated the Finder's Fee Act by focusing our analysis on an antecedent step. Because Prosperity Mortgage was the lender named in the loan documents, it was not a mortgage broker under the Maryland Finder's Fee Act, Md. Code Ann., Com. Law § 12-801(f), and the fees it charged were therefore not finder's fees, which are defined as fees "<u>imposed by a broker</u> . . . for the broker's services in procuring, arranging, or otherwise assisting a borrower in obtaining a loan or advance of money," <u>id.</u> § 12-801(d) (emphasis added).

The Finder's Fee Act "applies only to mortgage brokers and the fees they charge borrowers." <u>Sweeney v. Sav. First Mortg., LLC</u>, 879 A.2d 1037, 1048-49 (Md. 2005). Therefore, the Petrys

14

would have to show that Prosperity Mortgage functioned as a "mortgage broker" to fall within the scope of the Act.

While determining the definition of "mortgage broker" in the Finder's Fee Act involves following multiple cross references, its meaning is nonetheless clear. Section 12-801(f) of that Act defines "mortgage broker" as "a person defined as a mortgage lender under § 11-501(j)(1)(i) of the Financial Institutions Article." Md. Code Ann., Com. Law § 12-801(f). That specific provision of the Financial Institutions Article, in turn, states that a "'[m]ortgage lender' means any person who . . . [i]s a mortgage broker." Md. Code Ann., Fin. Inst. § 11-501(j)(1)(i). The same section of the Financial Institutions Article then defines "mortgage broker" as "a person who: (1) [f]or a fee or other valuable consideration, whether received directly or indirectly, aids or assists a borrower in obtaining a mortgage loan; and (2) [i]s not named as a lender in the agreement, note, deed of trust, or other evidence of the indebtedness." Id. § 11-501(i) (emphasis added). Thus, an entity that is named as the lender in the operative loan documents is categorically excluded from the definition of "mortgage broker," as that term is used in the Finder's Fee Act.

This applicable statutory language is fatal to the Petrys' claims because the loan documents in the Petrys' transaction identified Prosperity Mortgage as the lender. These documents

15

included the promissory note, the deed of trust, and the HUD-1 Settlement Statement. Because Prosperity Mortgage was so named as the lender, it was not, by statutory definition, a "mortgage broker" and therefore was incapable of violating the Finder's Fee Act in the manner alleged by the Petrys.

The Petrys' primary argument against this conclusion rests on a challenge to the rationality of the statutory definition. They argue that the exclusion of the named lender from the definition of "mortgage broker" is "irreconcilable" with § 12-804(e), a provision of the Finder's Fee Act that states that "[a] mortgage broker may not charge a finder's fee in any transaction in which the mortgage broker . . . is the lender." Md. Code Ann., Com. Law § 12-804(e).[1] But this provision is not irreconcilable with the statute's definition of mortgage broker. To be sure, the definition of "mortgage broker" means that an entity that is named as the lender in the loan documents cannot be a mortgage broker and therefore cannot violate § 12-804(e) by charging a finder's fee while serving as both broker and lender. This does not, however, mean that it is impossible for an entity

---

[1] Section 12-804(e) provides in full:

A mortgage broker may not charge a finder's fee in any transaction in which the mortgage broker or an owner, part owner, partner, director, officer, or employee of the mortgage broker is the lender or an owner, part owner, partner, director, officer, or employee of the lender.

16

to violate § 12-804(e) by charging a finder's fee while acting in a dual role.  Rather, such a situation could occur if a broker were to accept a finder's fee to help a borrower obtain a loan from an entity that merely put its name on the loan documents while the broker secretly "table funded" the loan[2] -- essentially the reverse of what the Petrys alleged below.  In such a scenario, the broker would be charging a finder's fee in a transaction in which it was <u>both the mortgage broker</u> (since it received a fee for aiding the borrower in obtaining a mortgage loan but was not named as the lender in the loan documents, Md. Code Ann., Fin. Inst. § 11-501(i)) <u>and the lender</u>, <u>see</u> Md. Code Ann., Com. Law § 12-801(e); Md. Code Ann., Fin. Inst. § 11-501(j)(1)(ii) (defining "lender" broadly as "any person who . . . [m]akes a mortgage loan to any person").  In this example, § 12-804(e) comfortably coexists with the statute's definition of "mortgage broker."

At bottom, we are constrained by the plain meaning of the Finder's Fee Act and its definition of "mortgage broker."  We simply cannot excise, as the Petrys would have us do, the portion of the definition that excludes the entity named as the lender in the transaction.  <u>See</u> <u>Taylor v. NationsBank, N.A.</u>, 776

---

[2]  "Table funding" is a term of art that describes "a settlement at which a loan is funded by contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds."  12 C.F.R. § 1024.2.

17

A.2d 645, 654 (Md. 2001) (noting that, in construing a statute, the Maryland Court of Appeals will "neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning").

Faced with the statute's plain language defining "mortgage broker," the plaintiffs argue further that the definition "is either the result of legislative error, or a mistake by the Michie Company, which codifies the Maryland statutes." But they have provided no basis by which to justify that assertion. The definition of mortgage broker in the Finder's Fee Act is clear and can be reasonably applied to the transaction before us. Because Prosperity Mortgage was named as the lender in the Petrys' closing documents, it was not a mortgage broker as a matter of law, and any fees that it charged were necessarily not finder's fees.

Since we conclude that Prosperity Mortgage did not violate the Finder's Fee Act, we need not resolve the question of whether Long & Foster and Wells Fargo can be liable for Prosperity Mortgage's violations under theories of aiding and abetting and conspiracy. See Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc., 665 A.2d 1038, 1045, 1050 (Md. 1995) (recognizing that both conspiracy and aiding and abetting

18

liability require proof of an underlying wrong).  It is also not necessary for us to address the issues raised in the defendants' conditional cross-appeal.

Accordingly, we affirm the judgment of the district court, deny the Petrys' motion to certify questions of law to the Maryland Court of Appeals, and deny, as moot, the Petrys' motion to dismiss the defendants' cross-appeal.

<u>IT IS SO ORDERED</u>.